735 So.2d 1117 (1999)
Jerome Joseph GALLOWAY, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01187-COA.
Court of Appeals of Mississippi.
April 6, 1999.
*1118 Harry B. Ward, Attorney for Appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, Attorney for Appellee.
BEFORE McMILLIN, C.J., KING, P.J. AND DIAZ, J.
KING, P.J., for the Court:
¶ 1. Jerome Joseph Galloway was found guilty of the transfer of a schedule II controlled substance, cocaine, and subsequently sentenced to serve a term of sixty years, with fifteen years suspended, in the *1119 custody of the Mississippi Department of Corrections. Feeling aggrieved by both the conviction and sentence, Galloway has appealed and assigned the following as error:
I. THE EVIDENCE WAS INSUFFICIENT TO MAINTAIN A CONVICTION
II. THE JURY WAS IMPROPERLY INSTRUCTED REGARDING GALLWAY'S PRIOR CONVICTION.
III. THE JURY WAS IMPROPERLY IMPANELED IN VIOLATION OF MISS. CODE ANN. § 13-5-25.
IV. THE JURY DID NOT FOLLOW THE COURT'S INSTRUCTIONS; BUT, INSTEAD ALLOWED THEMSELVES TO BE SWAYED BY THEIR OWN BIASES AND PREJUDICES BASED ON THE NATURE OF GALLOWAY'S CHARGES, HIS APPEARANCE, AND HIS PREVIOUS CONVICTION.

Facts
¶ 2. On July 23, 1996, at approximately 8:40 p.m., Hancock County law enforcement conducted a sting operation to make drug buys from street level dealers. Officer Richard Kelly made two undercover buys. On May 12, 1997, Jerome Joseph Galloway was indicted by the Hancock County grand jury for the sale or transfer of cocaine to an undercover officer, Officer Kelly.
¶ 3. During the trial of this matter, Detective Jeff Hair testified that he issued Officer Kelly a $20 bill. Detective Hair testified that the second buy was "unexpected" and that Officer Kelly used personal funds to purchase the drugs. Officer Kelly testified that he was issued $40 in official funds to make the buy. However, in his notes made after the buy, Officer Kelly indicated that he was issued only $20 in official funds. When cross-examined regarding this discrepancy, Officer Kelly responded that he was issued additional funds "in case on [his] way out that [he would be] stopped by another subject to make a purchase."
¶ 4. Officer Kelly made two buys on the night in question. Officer Kelly's vehicle was equipped with an infrared surveillance camera to record the transactions. The violator in the first sale could not be identified from the videotape.
¶ 5. Officer Kelly testified that he was flagged down by an individual in Bay St. Louis at the intersection of Washington and Old Spanish Trail where he made the second buy. Officer Kelly testified that Galloway approached the vehicle and Officer Kelly asked him for a "dove," i.e., crack cocaine. Galloway then entered the passenger compartment of Officer Kelly's vehicle, made the sale, and was dropped off by Officer Kelly further down Washington Street. Officer Kelly made an in-court identification of Galloway as the person from whom he made the buy.
¶ 6. Officer Kelly testified that he did not notice tattoos on Galloway's left arm and nose due to the darkness and because the dome light in his vehicle was purposefully disabled to prevent distortion of the infrared video surveillance.
¶ 7. Investigator Brett Ladner testified for the State that he also participated in the "buy/walk"[1] operation on the night of July 23, 1996. Investigator Ladner testified that he monitored Officer Kelly's buy over the transmitter. After the buy, Officer Kelly met the rest of the surveillance team at the predisclosed location at which time Investigator Ladner performed a field test on the substance, which tested positive for cocaine.
¶ 8. Investigator Ladner further testified that Galloway's brother, Kevin Galloway, was initially arrested in the roundup for the transfer. This mistake was discovered *1120 when Detective Tom Burleson noticed that Kevin was in jail and suggested that he was not the right person. Investigator Ladner subsequently provided Detective Burleson with the video and a still photograph of the buy. Upon review, Detective Burleson identified the violator as Kevin's brother, Jerome Galloway.
¶ 9. Detective Burleson testified that he had known the Galloways, Kevin and Jerome, for twelve years. Detective Burleson testified that he was at the jail because Jerome Galloway's probation officer asked him to pick Jerome Galloway up for a probation violation. While there, he noticed Kevin in a cell and inquired of him why had he been arrested, Kevin responded selling drugs. He immediately felt something was amiss because, "out of all the times dealing with [Kevin], [he] never dealt with him for dealing dope." He further testified that upon viewing the video and still photograph he told Investigator Ladner, "Well, that's not Kevin. That's Jerome."
¶ 10. The State next called Kevin Galloway as a part of its case-in-chief. He was shown a copy of the still photograph taken from the video. Kevin Galloway was asked to identify the person depicted in the photograph. He responded that he had no idea who the person was and never seen that photograph. Kevin testified that he had previously identified a photograph which depicted a man using a public telephone as his brother, Jerome.
¶ 11. Clara Galloway, the mother of Kevin and Jerome, next testified for the State. She also denied that the person in the photo was Jerome. When asked had she been previously shown a photograph by Detective Burleson, she testified that the photograph was of her son, Jerome, on the telephone.
¶ 12. The State recalled Officer Burleson who testified that he only had one photograph of Jerome Galloway, the photograph Investigator Ladner provided from the video. He testified that he showed the photograph to Clara Galloway and that she responded, "Tom, you know who that is.... That's my son, Jerome." Detective Burleson stated that after he informed Ms. Galloway that Jerome denied that that photograph depicted his likeness she responded, "Well, why does he want to lie?"
¶ 13. The State rested and Galloway moved for directed verdict. The trial court found that the State had made out its prima facie case and denied the motion.
¶ 14. Galloway first called Officer Ernest L. Taylor, Sr. to testify. He identified the person in the video and the still photograph as Kevin Galloway.
¶ 15. Next, Galloway called Officer Thyra Labat to testify. She testified that she had identified the person seen in the video as Kevin Galloway. On cross-examination, she stated a present belief that the person in the video was Jerome.
¶ 16. Valerie Halton testified that she was Jerome Galloway's girlfriend and that they were together on the night of July 23, 1996 at approximately 8:30 p.m. She based her testimony on a recollection of being caught that night having sexual relations with Jerome in Buccaneer State Park by a park ranger.
¶ 17. Next, Jerome Galloway testified on his own behalf and denied that he was the person that appeared on the videotape.
¶ 18. Mildred Wilson testified that she operates a half-way house for ex-offenders and that Jerome Galloway became a resident there on April 1, 1997. She testified that she was not familiar with Jerome Galloway's reputation in the community for truth.
¶ 19. Finally, Jerome Galloway called Dorothy diBeneditto to testify on his behalf. Ms. diBeneditto testified that she had known Jerome since he was five or six years old. She testified to having first become acquainted with Jerome Galloway through her's daughter's association with him. She testified that her husband had also hired him to do odd jobs around the house.
*1121 ¶ 20. The defense rested and renewed its motion for directed verdict which was overruled by the trial court.
¶ 21. After deliberations, on August 15, 1997, the jury returned a verdict of "Guilty of Transfer of A Controlled Substance" against Galloway. On August 29, 1997, the trial court sentenced Galloway to a term of sixty years with fifteen years suspended leaving forty-five years to be served in the custody of the Mississippi Department of Corrections and a $5,000 fine. Thereafter, Galloway moved for a new trial or, in the alternative, judgment notwithstanding the verdict which was overruled.

Discussion

I. THE EVIDENCE WAS INSUFFICIENT TO MAINTAIN A CONVICTION.
¶ 22. Jerome Galloway argues that the evidence adduced at trial was insufficient to prove his guilt beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence. Galloway argues that the State failed to identify him as the person depicted in the video recording of the sale transaction. We disagree. The burden of proof which Galloway would require the State to meet is not appropriate for cases based on direct evidence but for those cases based solely on circumstantial evidence. Deloach v. State, 658 So.2d 875, 876 (Miss.1995). Because the State's case against Galloway is based, in part, on eyewitness testimony, this Court rejects the notion that the State must prove Galloway's guilt to the exclusion of every reasonable hypothesis consistent with innocence.

Standard of Review
¶ 23. In reviewing a challenge to the legal sufficiency of the evidence, this Court considers the evidence which is before the trial court when it last considered the legal sufficiency of the evidence. Blanks v. State, 542 So.2d 222, 225-26 (Miss.1989). In this case, the last occasion on which the trial court considered the sufficiency of the evidence was after the State and the defense had both rested.
¶ 24. In McClain v. State, 625 So.2d 774, 778 (Miss.1993), the Mississippi Supreme Court set out the following guideline for appellate review of a challenge to the sufficiency of the evidence:
[T]he sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [the appellant's] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.

Analysis
¶ 25. Mississippi Code Annotated § 41-29-139(a)(1)(Supp.1998) makes it unlawful "[t]o sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance." The record reveals that the State put on ample evidence that Galloway sold cocaine on the day in question.
¶ 26. Officer Kelly testified that he bought crack cocaine from a man on July 23, 1996, during a sting operation and identified that man as the appellant, Jerome Galloway. Detective Burleson testified that he had known the appellant and his brother for twelve years and that Jerome Galloway was the man depicted on the videotape and the still photograph taken from that same videotape. The jury was able to view the videotape of the transaction and Galloway in the courtroom. This allowed the jury to compare the individual seated in the courtroom with the *1122 individual appearing on the videotape and make an appropriate factual determination as to whether they believed that the two were the same.
¶ 27. Kevin Galloway testified that he could not identify the person depicted in the still photograph taken from the videotape. Clara Galloway denied that the person in the photograph was her son. Jerome Galloway denied that he was the person depicted on the videotape.
¶ 28. That there was contradictory evidence adduced during the trial does not mean that the evidence was insufficient. The contradictory evidence merely created an issue of disputed fact to be resolved by the jury.
¶ 29. The jury is the sole judge of the weight and credibility of testimony. McClain, 625 So.2d at 781. Here, it is clear that jury did not find the defense witnesses to be credible.
¶ 30. We, therefore, find that the State presented sufficient evidence that a jury might convict Galloway for the transfer of cocaine.

II. THE JURY WAS IMPROPERLY INSTRUCTED REGARDING GALLOWAY'S PRIOR CONVICTION.
¶ 31. During the jury instruction conference, the trial judge requested that both sides submit a limiting instruction concerning Galloway's prior conviction. Following this directive the State's instruction, S-2 reads as follows:
The Court instructs the jury that the testimony of the defendant, Jerome Joseph Galloway, regarding a prior conviction for the sale of cocaine was offered in an effort to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident regarding this defendant. You may give this testimony such weight and credibility as you deem proper under the circumstances. However, you cannot and must not consider this testimony, in any way regarding whether or not the defendant is guilty or not guilty of the charge for which he is presently on trial.
¶ 32. Galloway's instruction, D-4, reads as follows:
Testimony has been presented that the defendant has previously been convicted of a prior act, transfer of a controlled substance, cocaine. You are instructed that the defendant's prior act shall not be considered in determining the guilt or innocence of the defendant in this matter
¶ 33. After review of both instructions, the following colloquy ensued:
THE COURT: In light of the two instructions, the Court is going to refuse D-4 because I don't believe it goes as far as I want it to go, and I'm going to give S-2.
Mr. Ward, if you want to make any record, go ahead and do so at this time.
MR. WARD: May it please the Court, your Honor, my only record would be what I have submitted.
Thereafter, S-2 was given with one minor modification.

Analysis
¶ 34. It is readily apparent that jury instruction S-2 provided a clearer charge to the jury as to the limited purpose for which it could consider evidence of Galloway's prior conviction. In fact, as correctly pointed out by the State, instruction S-2 closely tracks the approved instruction given in Ford v. State, which read as follows:
The Court instructs the jury that the testimony of Gloria Carter regarding an alleged incident at the First National Bank in West Memphis, Arkansas, was offered in an effort to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, regarding this Defendant, John Wiley Ford. You may give this testimony such weight and credibility as you deem proper under the circumstances. However, you can not and *1123 must not consider this testimony in any way regarding whether or not this Defendant is guilty or not guilty of the charge for which he is presently on trial.

Ford v. State, 555 So.2d 691, 695-96 (Miss.1989)(emphasis added).
¶ 35. Galloway also argues that the trial court erred in failing to instruct the jury sua sponte that "identification testimony was an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later." Galloway urges this Court to reverse the trial court in spite of the fact that he failed to offer an identification instruction and failed to raise this issue in his motion for new trial.
¶ 36. We find that Galloway is procedurally barred from raising this issue for the first time on appeal. Chase v. State, 645 So.2d 829, 859 (Miss.1994). "Further, the trial judge shall not be put in error for his failure to instruct on any point of law unless specifically requested in writing to do so." Newell v. State, 308 So.2d 71, 78 (Miss.1975).

III. THE JURY WAS IMPROPERLY IMPANELED IN VIOLATION OF MISS. CODE ANN. § 13-5-25.
¶ 37. Galloway next alleges that several members of his jury panel had served in the previous day's trial and were not allowed to take the exemption afforded by Miss.Code Ann. § 13-5-25 which reads in pertinent part as follows:
Every citizen over sixty-five (65) years of age, and everyone who has served on the regular panel as a juror in the actual trial of one or more litigated cases within two (2) years, shall be exempt from service if he claims the privilege; but the latter class shall serve as talesmen, and on special venire, and on the regular panel, if there be a deficiency of jurors.

Analysis
¶ 38. Galloway's argument misses the mark. Jurors are seldom called for a single case, rather they are summoned as a venire from which jurors will be selected to hear cases for a specific period. That period is generally one week. The exemption contemplated by § 13-5-25 does not apply to service within the designated venire period. This argument is without merit.

IV. THE JURY DID NOT FOLLOW THE COURT'S INSTRUCTIONS; BUT, INSTEAD ALLOWED THEMSELVES TO BE SWAYED BY THEIR OWN BIASES AND PREJUDICES BASED ON THE NATURE OF GALLOWAY'S CHARGES, HIS APPEARANCE, AND HIS PREVIOUS CONVICTION.
¶ 39. Galloway requests this Court to remand this case for a new trial due to juror misconduct. Specifically, Galloway states that he has procured an affidavit from a juror who claims to have considered Galloway's prior conviction as proof of his guilt of the crime charged in the present case.

Analysis
¶ 40. This point of error is not properly before this Court. Galloway failed to raise this issue in his motion for new trial. The point is, therefore, procedurally barred. Procedural bar notwithstanding, we will proceed to dispose of this issue on the merits.
¶ 41. Mississippi Rules of Evidence Rule 606(b) reads as follows:
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror *1124 may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes. (emphasis added).
¶ 42. "Where the resolution of a case comes down to factual disputes, the jury's role becomes paramount as it weighs the credibility of the witnesses and determines which factual accounts to accept or reject. Thus, it is absolutely imperative that the jury be unbiased, impartial, and not swayed by the consideration of improper, inadmissible information." Hickson v. State, 707 So.2d 536, 544 (Miss. 1997). However, we do not allow a jury to impeach its own verdict. Crawley v. Illinois Central Railroad Co., 248 So.2d 774, 775 (Miss.1971).
¶ 43. Generally, jurors are not allowed to testify or give affidavits concerning their secret deliberations. Gladney v. Clarksdale Beverage Co., 625 So.2d 407, 419 (Miss.1993); Folk v. State, 576 So.2d 1243, 1250 (Miss.1991). Pursuant to M.R.E. 606(b), a juror may give only testimony or an affidavit in the event that extraneous prejudicial information is improperly brought to the jury's attention or when a outside influence is improperly brought to bear upon a juror. Only in these two specific instances should an inquiry be had into the jury's deliberations.
¶ 44. The affidavit's allegation of juror misconduct does not involve extraneous prejudicial information that was brought to a juror's attention nor does it allege that an outside influence was improperly brought to bear upon any juror and is therefore improper.
¶ 45. THE JUDGMENT OF THE HANCOCK COUNTY CIRCUIT COURT OF CONVICTION OF JEROME JOSEPH GALLOWAY OF TRANSFER OF A SCHEDULE II SUBSTANCE, COCAINE AND SENTENCE TO SERVE SIXTY YEARS, WITH FIFTEEN YEARS SUSPENDED, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND $5,000 FINE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HANCOCK COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, COLEMAN, DIAZ, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
IRVING, J., CONCURS IN RESULT ONLY.
NOTES
[1] Investigator Ladner described the "buy/ walk" operation as one where the violator is not immediately arrested to protect the undercover agents cover so that additional buys might be made in that same area.