797 So.2d 1049 (2001)
Trevor Derece EDWARDS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-00379-COA.
Court of Appeals of Mississippi.
September 25, 2001.
*1051 Wanda Turner-Lee Abioto, Southaven, for Appellant.
Office of the Attorney General by Dewitt T. Allred III, for Appellee.
*1052 Before McMILLIN, C.J., BRIDGES, and MYERS, JJ.
BRIDGES, J., for the Court:
¶ 1. This case comes from the Circuit Court of DeSoto County, Honorable George B. Ready presiding. Trevor Edwards was convicted of aggravated assault, car-jacking, simple assault, aggravated assault of a law enforcement officer, kidnapping a minor child, and kidnapping. Edwards now appeals to this Court bringing four issues:
1. WHETHER THE EVIDENCE PRESENTED WAS WHOLLY INSUFFICIENT TO SUPPORT VERDICT OF GUILTY IN COUNTS 7 AND 9?
2. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE MOTION FOR A NEW TRIAL WHEREIN THE VERDICT OF GUILTY UNDER COUNTS 2, 3, 4, AND 5 WERE CONTRARY TO LAW AND WEIGHT OF EVIDENCE?
3. WHETHER THE CUMULATIVE ALLOWANCE OF INCOMPETENT OPINION TESTIMONY BY OFFICER SHANNON BESHEARS, OFFICER CLIFFORD FREEMAN, OFFICER STEVE PIRTLE, AND OFFICER DONALD DODGE CONSTITUTED ERROR WHICH SUBSTANTIALLY PREJUDICED THE FINDINGS OF THE JURORS?
4. WHETHER THE SEPARATE AND CUMULATIVE RESULTS OF DEFENSE COUNSEL'S FAILURE TO (1) PRESENT REBUTTAL TESTIMONY DURING THE COMPETENCY HEARING REGARDING THE CURRENT MEDICATION AND MEDICAL CARE OF THE DEFENDANT AND (2) UNTIMELY PREPARATION FOR THE DEFENSE OF INSANITY CONSTITUTES INEFFECTIVE ASSISTANCE OF COUNSEL?
Finding no error, we affirm.

STATEMENT OF THE FACTS
¶ 2. On May 26, 1999, Trevor Edwards went to the home of Danita and Brandy Hobson to talk with his ex-girlfriend Kenya Rice. Rice and Edwards had lived together and had one child. Danita Hobson testified Edwards came over to her mother's house after having a conversation with Rice over the phone. Hobson testified that when Edwards arrived, Rice and Edwards went into another room. After a few minutes, Hobson heard Rice begin to scream. Rice testified Edwards grabbed her keys as he was leaving, then grabbed her by the hair and began dragging her out of the house. Edwards was able to drag Rice to the car, but not before Hobson could steal the keys away from him. Edwards then began dragging Rice down the street.
¶ 3. Charles Murphy was driving his van when he saw Edwards dragging Rice down the street. Murphy stopped and told Edwards to let Rice go, but Edwards ignored him. Murphy used his van to nudge Edwards away from Rice and opened the side door to let Rice into the van. Edwards, however, jumped into the van and began struggling with Murphy. Edwards bit Murphy and told Murphy he had a gun. Murphy tried to pull Edwards out of the driver's side door, but Edwards slipped away, put the van in gear, and drove off.
¶ 4. Rice testified that after Edwards pulled her into the van, he bit her face and she blacked out. Evidence was produced at trial indicating Edwards had bitten Rice repeatedly on her body, including her breast, drawing blood. Testimony was also offered showing the pursuing officers could tell Edwards was trying to choke Rice as he drove. Evidence was also produced *1053 proving Rice had received various injuries from being dragged along the sidewalk and street, and Edwards had ripped her clothes off, including her underwear.
¶ 5. Horn Lake police officers William Burdette and Tim Little responded to the radio reports which stated Edwards was dragging Rice around and ripping her clothes off. En route, the two officers were notified Edwards had put Rice into a van, so the officers began pursuing the van. Sirens and lights blazing, the two officers chased Edwards for three miles at speeds of seventy miles an hour. Edwards ran a stop sign at a major intersection. Burdette pulled alongside the van, saw Edwards choking Rice, and raced ahead of the van in an attempt to force Edwards to stop. Burdette was forced into a ditch to avoid oncoming traffic, and Little continued the chase. Edwards then turned, lost control of the van, and drove into a ditch where the van stopped.
¶ 6. Officer Little approached the van where Edwards was biting and choking Rice. Edwards and Rice were both covered in blood. Officer Shannon Beshears arrived on the scene and helped Officer Little attempt to pull Rice away from Edwards. According to Officer Beshears, Edwards was very aware of what he was doing. After releasing her, Edwards grabbed Rice again and the officers were forced to spray him in the face with Freeze Plus P, a chemical agent. They also hit Edwards several times with a metal baton. Neither of these actions caused Edwards to release Rice. A game of chase ensued as Edwards darted around the van avoiding the officers. Two other police officers, officers Pirtle and Fullilove, arrived on the scene and the officers again sprayed Edwards with a chemical and hit him with batons. It was not until the hair extensions in Rice's head which Edwards was holding onto tore out of her head that the officers were able to get Rice away from Edwards. The officers managed to handcuff Edwards, but not before Edwards bit Officer Beshears on the hand.
¶ 7. One would think this drama was over, but this situation was just beginning. The officers took Edwards to the Baptist DeSoto Hospital. At the hospital, Officers Donald Dodge and Rhonda Webb were put in charge of Edwards, and Edwards was kept in handcuffs and leg restraints. Edwards began to show signs of remorse, and even apologized to some of the officers for biting them. Edwards was x-rayed and treated for his injuries and, according to the testimony, appeared quite calm.
¶ 8. As the officers were getting ready to transport Edwards to the jail, Officer Webb stepped across the hall to use the bathroom. Officer Dodge began uncuffing Edwards's left hand so he could re-cuff Edward's wrists behind his back. As soon as his left hand was free, Edwards spun around and lunged for Officer Dodge's sidearm. Officer Dodge tried to prevent the gun from coming out of its holster, but as the two struggled it fell out. They began wrestling for the gun, and Officer Dodge managed to release the magazine from the gun. Officer Dodge also managed to fire the gun in a safe direction to empty the chamber and prevent Edwards from getting a loaded gun. Edwards bit Officer Dodge and managed to wrestle the gun away from him. Edwards pointed the empty gun at Officer Dodge and dry fired.
¶ 9. Officer Webb entered the room during the scuffle. She pulled her weapon and ordered Edwards to get off of Officer Dodge. Edwards attempted to point the weapon at her and threatened to kill her. Officer Webb began stomping and kicking at Edwards's hand to try and get him off of Officer Dodge, but he would not move. Edwards began biting her legs, and began *1054 trying to wrestle her down. Officer Webb managed to release the magazine from her gun and strike Edwards with the pistol butt. Edwards knocked Officer Webb down, jumped on top of her, and bit her arm. Officer Webb managed to kick Edwards off of her, but he managed to get control of the weapon. Edwards then pointed the weapon at Officer Webb and began backing out of the treatment wing. Officer Webb followed.
¶ 10. Edwards backed out of the treatment room and down the hall to the ambulance exit. Edwards demanded Officer Webb's car keys and exited the hospital. As he entered the parking lot, Edwards grabbed a little boy, Johnny Bogdal, and put the gun to the boy's head. Edwards then dragged the boy back into the hospital toward the nurse's station. Edwards demanded to know where Kenya Rice was, and a nurse, Kathy Bynum, told him she was at another hospital. Edwards released the little boy, who was gathered up by his father, and then grabbed Bynum. Edwards then asked Dr. Lewis, who was standing nearby, for his keys. Dr. Lewis replied there were no keys in this area, and then Edwards took both Bynum and Dr. Lewis back to the treatment room. Bynum testified that during the entire ordeal, Edwards kept her in front of him as a shield.
¶ 11. Edwards demanded and was given a cell phone so he could try and call Rice. Edwards kept Bynum and Lewis in the treatment room for three hours. A hostage negotiator, Clifford Freeman, was brought in. Edwards stated several times he wanted Kenya Rice to come to the hospital. Edwards also demanded to see his mother, Mary Edwards. Edwards released Bynum when he was allowed to see his mother. Edwards's mother and Freeman were able to talk Edwards into giving up.
¶ 12. At trial, Mary Edwards stated Edwards was not a violent person and, on the day in question, he was not himself. Stacey Miller, Edwards's aunt, testified he was very upset on the day in question and had spoken of suicide. Edwards himself testified he did not remember a great deal of the things which happened that day. Edwards testified he was tired of playing games with Rice and became "real dizzy." Edwards did not remember dragging Rice down the street or hurting her after the wreck. Edwards also testified he did not remember biting anyone. During the State's rebuttal case, Dr. Charles Harris, a psychologist at Whitfield, testified Edwards was competent to stand trial. Dr. Harris also testified Edwards was suffering from no mental disorder at the time of the offenses and Edwards knew the difference between right and wrong.
¶ 13. Out of the nine offenses for which Edwards was indicted, the jury returned not guilty verdicts on count 1 (not guilty of kidnapping of Kenya Rice by reason of insanity), count 6 (not guilty of aggravated assault upon a law enforcement officer Donald Dodge), and count 8 (not guilty of kidnapping James Lewis). Edwards was found guilty of count 2 (guilty of aggravated assault of Kenya Rice), count 3 (guilty of car-jacking), count 4 (guilty of simple assault on a law enforcement officer Shannon Beshears), count 5 (guilty of aggravated assault of a law enforcement officer Rhonda Webb), count 7 (guilty of kidnapping Johnny Bogdall), and count 9 (guilty of kidnapping Kathy Bynum).

DISCUSSION OF THE LAW

STANDARD OF PROOF
¶ 14. A motion for a directed verdict and a motion for JNOV challenges the sufficiency of the evidence. The standard of review for a challenge to the sufficiency *1055 of the evidence is stated in McClain v. State, 625 So.2d 774, 778 (Miss.1993):
In appeals from an overruled motion for JNOV, the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence ... consistent with guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
(citations omitted); see also Williams v. State, 595 So.2d 1299, 1302 (Miss.1992); Heidel v. State, 587 So.2d 835, 838 (Miss. 1991); Roberts v. State, 582 So.2d 423, 424 (Miss.1991).
¶ 15. A motion for a new trial is left to the circuit court's discretion and raises issues regarding the weight of the evidence. Jackson v. State, 551 So.2d 132, 148 (Miss.1989). The standard of review for a challenge to the weight of the evidence is found in Thornhill v. State, 561 So.2d 1025, 1030 (Miss.1989):
In determining whether or not a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when it is convinced that the circuit court has abused its discretion in failing to grant a new trial.
See also Isaac v. State, 645 So.2d 903, 907 (Miss.1994); Newsom v. State, 629 So.2d 611, 615 (Miss.1993); Burrell v. State, 613 So.2d 1186, 1190-91 (Miss.1993); Nicolaou v. State, 612 So.2d 1080, 1083 (Miss.1992); Parker v. State, 606 So.2d 1132, 1139-40 (Miss.1992).
¶ 16. "Evidentiary rulings are within the broad discretion of the trial court and will not be reversed absent an abuse of discretion." Dobbs v. State, 726 So.2d 1267 (¶ 25) (Miss.Ct.App.1998).
¶ 17. The standard to be applied in claims of ineffective assistance of counsel is well known. The defendant must prove his attorney's performance was defective and the deficiency deprived the defendant of a fair trial. Hiter v. State, 660 So.2d 961, 965 (Miss.1995). This deficiency is assessed by looking at the totality of the circumstances. Id. There is also a strong presumption the attorney's conduct fell within the wide realm of reasonable professional assistance, and this review is highly deferential to the attorney. Id.

ANALYSIS

1. WHETHER THE EVIDENCE PRESENTED WAS WHOLLY INSUFFICIENT TO SUPPORT VERDICT OF GUILTY IN COUNTS 7 AND 9?
¶ 18. Edwards argues the prosecution failed to prove all of the elements of kidnapping. Specifically, Edwards cites the kidnapping jury instructions, which state "(3) with the intent to cause Kathy Bynum (Johnny Bogdall, V) to be secretly confined against her (his) will; that is, deprived of her (his) liberty, by physically restraining her (him) against her (his) will and without her (his) consent." Edwards argues the State failed to prove he "secretly confined" anyone. The State argues Edwards is procedurally barred by failing to raise this specifically in his motion for directed verdict and motion for judgment notwithstanding the verdict. The State also argues, notwithstanding the procedural bar, the State did successfully prove all of the elements of the crimes.
*1056 ¶ 19. Concerning the procedural bar, the case law states "[a] motion for a directed verdict on the grounds that the state has failed to make a prima facie case must state specifically wherein the state has failed to make a prima facie case." Sheffield v. State, 749 So.2d 123, 126 (Miss.1999) (quoting Banks v. State, 394 So.2d 875, 877 (Miss.1981)). In the case at bar, the defense failed to plead enough in its motions to meet the requirement of specificity of pleadings. While the defense did contend the State failed to meet all of the elements of a prima facie case, it did not specifically mention the word "secretly" as the specific element the State failed to prove. Because of this, Edwards is procedurally barred from raising this issue for the first time on appeal. Id. Procedural bar notwithstanding, this Court holds Edwards failed to prove the evidence in this case was insufficient.
¶ 20. This Court concludes the State offered enough evidence to sufficiently prove the elements of the crime of kidnapping. The Mississippi Code sets out the elements of the crime of kidnapping in section 97-3-53, which states a person who is guilty of kidnapping is "[a]ny person who shall without lawful authority forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause such person to be secretly confined or imprisoned against his or her will...." Miss. Code Ann. § 97-3-53 (Rev.2000).
¶ 21. Edwards limits his argument to the fact the State did not prove Edwards did all of his actions secretly. It is obvious by looking at the statute and the jury instructions offered the jury that a person can be guilty of kidnaping if they secretly confine a person or if they imprison a person against that person's will. Conley v. State, 790 So.2d 773 (¶ 84) (Miss. 2001). If the State were required to prove a victim was both secretly confined and imprisoned then it would be virtually impossible to prove someone was guilty of kidnaping. The jury was not offered an incorrect statement of the law requiring them to find Edwards guilty of both secretly confining and imprisoning. The jury was given proper instructions, and they followed them. In challenges to the sufficiency of the evidence, the State is given the benefit of all reasonable inferences and we must view the evidence in the light most favorable to the conviction. McClain v. State, 625 So.2d 774, 778 (Miss. 1993). With this in mind, it is manifestly clear the evidence offered on counts seven and nine was more than sufficient to support a guilty verdict. Therefore, we affirm as to this issue.

2. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE MOTION FOR A NEW TRIAL WHEREIN THE VERDICT OF GUILTY UNDER COUNTS 2, 3, 4, AND 5 WERE CONTRARY TO LAW AND WEIGHT OF EVIDENCE?
¶ 22. Edwards's main argument in this issue is that his not guilty by reason of insanity verdict on count 1 of the indictment should reverse his conviction of counts 2, 3, 4, and 5 because his insanity should run to all of these acts. These charges include: count 2 (aggravated assault of Kenya Rice), count 3 (car-jacking), count 4 (simple assault on a law enforcement officerShannon Beshears), and count 5 (aggravated assault of a law enforcement officerRhonda Webb). Edwards argues that though the jury has a right to render inconsistent verdicts, no evidence was produced by the State proving Edwards at some point returned to sanity. In other words, since he was insane for one, he was insane for all because the State did not prove he had a chance to *1057 calm down before committing the other acts.
¶ 23. In Mississippi, to establish an insanity defense, one must prove "that at the time of commission of the act the accused was laboring under such a defect of reason from disease of the mind as (1) not to know the nature and quality of the act he was doing, or (2) if he did know it that he did not know that what he was doing was wrong." Stewart v. State, 790 So.2d 838 (¶ 7) (Miss.Ct.App.2000). The defendant is presumed sane, and thus carries the burden of creating a reasonable doubt as to his sanity at the time of the act. White v. State, 542 So.2d 250, 252 (Miss.1989). Once a defendant has met these requirements, the burden shifts, and the State may then meet its burden by offering evidence which proves the accused's sanity beyond a reasonable doubt. Id. Sanity is an issue left to the determination of the jury and must be upheld by this Court unless the jury's determination is against the overwhelming weight of the evidence. Id.
¶ 24. The main attack Edwards makes on his conviction is that since he was proven not guilty by reason of insanity for the act of kidnapping Kenya Rice, then his insanity should go to the other crimes since they arose out of the same set of facts. The U.S. Supreme Court re-stated, in the case of United States v. Powell, that inconsistent verdicts are allowable. United States v. Powell, 469 U.S. 57, 65, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). In Powell, the Court stated;
[I]nconsistent verdictseven verdicts that acquit on a predicate offense while convicting on the compound offense should not be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake compromise, or lenity arrived at an inconsistent conclusion on the lesser offense. But in such situations the Government has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting an acquittal by the Constitution's Double Jeopardy Clause.
"Inconsistent verdicts therefore present a situation of "error", in the sense that a jury has not followed the court's instruction, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course."
United States v. Powell, 469 U.S. 57, 65, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). The Mississippi Supreme Court has long followed the rule of law that inconsistent or contradictory verdicts are not, in and of themselves, reasons to overturn a criminal conviction. George v. State, 752 So.2d 440 (¶ 20) (Miss.Ct.App.1999). Where there are inconsistent verdicts, the proper standard of review to be used is the traditional test of weight and sufficiency of the evidence. Id.
¶ 25. While Mississippi has had cases dealing with inconsistent verdicts, we have never applied these rules to a case where a defendant was found guilty of some of the crimes but not guilty by reason of insanity of another crime on the same indictment. Other states have dealt with inconsistent verdicts in cases where an insanity defense has been asserted. In the case of Ruiz v. Texas, the Court of Appeals of Texas dealt with a case where a man was found not guilty by reason of insanity of three counts of murder, but was found guilty of one count of murder, all committed within a short time of one another. Ruiz v. Texas, 641 S.W.2d 364, 366 (Tex.App.1982). In *1058 that case, the Texas court applied the U.S. Supreme Court's rulings on inconsistent verdicts and affirmed the conviction, stating "[w]here a multi-count verdict appears inconsistent, the appellate inquiry is limited to a determination of whether the evidence is legally sufficient to support the counts on which a conviction is returned. What the jury did with the remaining counts is immaterial." Ruiz, 641 S.W.2d at 366 (citing United States v. Michel, 588 F.2d 986 (5th Cir.1979)). In Massachusetts, in the case of Commonwealth v. Chandler, the Appeals Court of Massachusetts dealt with a case where a man was found not guilty of murder by reason of insanity, but was found guilty of unlawfully carrying a firearm. Commonwealth v. Chandler, 29 Mass.App.Ct. 571, 563 N.E.2d 235, 241 (1990). The court in the Chandler case affirmed the defendant's conviction commenting "[t]he fact that the verdicts might be factually inconsistent is of no avail to the defendant. It is well settled that `factual inconsistencies in verdicts rendered in the same case do not afford a ground for setting aside the conviction.'" Chandler, 563 N.E.2d at 241 (quoting Commonwealth v. Harrison, 25 Mass.App.Ct. 267, 270, 517 N.E.2d 494 (1988)). After considering these case, it is the opinion of this Court that the fact Edwards was found not guilty by reason of insanity should not have an effect on this Court's analysis of inconsistent verdicts. Therefore, analysis of this issue shall proceed by following the traditional standard of review stated above.
¶ 26. In viewing attacks made upon the weight of the evidence, this Court must accept as true the evidence supporting the verdict and reverse only when convinced the trial court abused its discretion in not granting a new trial. Isaac v. State, 645 So.2d 903, 907 (Miss.1994). With this in mind, this Court finds Edwards's argument is without merit. Accepting the evidence which supports the verdict as true makes it quite obvious Edwards was well aware of what he was doing when he committed these acts. The fact that he apologized for his actions weighs heavily in support of the belief he knew the difference between right and wrong, and that he knew that his actions were wrongful. The claim Edwards made to Charles Murphy, that he had a gun, shows Edwards was aware of what he was doing and what was going on around him. The observations by the various police officers that Edwards was aware of what was going on further supports the view that Edwards was aware of what he was doing. It is the jury's role to weigh the credibility of the evidence and decide which facts are accepted or rejected. Galloway v. State, 735 So.2d 1117 (¶ 42) (Miss.Ct.App.1999). In this case, the jury plainly found Edwards was sane when he committed these crimes, and this Court sees no reason to disagree with their finding of sanity or with their verdict. The verdict was not against the overwhelming weight of the evidence. The trial court did not abuse its discretion by failing to grant Edwards a new trial, and for this reason, this Court affirms as to this issue.

3. WHETHER THE CUMULATIVE ALLOWANCE OF INCOMPETENT OPINION TESTIMONY BY OFFICER SHANNON BESHEARS, OFFICER CLIFFORD FREEMAN, OFFICER STEVE PIRTLE, AND OFFICER DONALD DODGE CONSTITUTED ERROR WHICH SUBSTANTIALLY PREJUDICED THE FINDINGS OF THE JURORS?
¶ 27. Edwards claims in this issue the trial court was incorrect in allowing officers Beshears, Freeman, Pirtle, and Dodge to testify as to their opinions on Edwards's state of mind. Edwards argues *1059 these officers testified as to the intent behind Edwards's actions, and this wrongfully prejudiced the jury. Edwards cites three different times in which these witnesses made such statements, and the statements he refers to were those made by Officers Beshears, Pirtle, and Dodge. The only statements objected to and properly preserved for appeal by defense counsel were statements made by Officers Beshears and Pirtle. The example of a "prejudicial statement" by Officer Dodge was not properly preserved for appeal by an objection and should therefore not be considered in this issue. Jackson v. State, 743 So.2d 1008 (¶ 32) (Miss.Ct.App.1999). After a lengthy discussion where it was made clear Officer Freeman's testimony was not expert opinion, no objection was made concerning the actual content of Officer Freeman's statements. As such, the content of Freeman's statements was not properly preserved for appeal, and cannot be considered here. Id.
¶ 28. Edwards claims the testimony of these witnesses violates Rule 701 of the Mississippi Rules of Evidence which deals with lay opinion. Rule 701 of the Mississippi Rules of Evidence states:
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to the clear understanding of his testimony or the determination of a fact in issue.
M.R.E. 701. The officers' testimony fulfills the requirements of 701 because the officers' opinions were rationally based on what they saw, and were helpful to the clear understanding of what the officers saw. It was also unnecessary for the officers to have to qualify as experts, because they were testifying to things (the way Edwards looked) for which it is not necessary to be qualified as an expert. Graves v. State, 761 So.2d 950 (¶ 11) (Miss.Ct.App. 2000). The testimony of the witnesses as to what Edwards looked like is not opinion testimony. It is merely a statement describing his appearance as the officers saw him and the opinions they formed based upon what they saw. This was clearly admissible evidence. This Court holds the testimony of these witnesses meets the requirements set out by Rule 701. Evidentiary rulings are within the trial court's broad discretion, and will only be overruled if an abuse of discretion is found. Dobbs v. State, 726 So.2d 1267 (¶ 25) (Miss. Ct.App.1998). There is no such abuse here, and we affirm as to this issue.

4. WHETHER THE SEPARATE AND CUMULATIVE RESULTS OF DEFENSE COUNSEL'S FAILURE TO (1) PRESENT REBUTTAL TESTIMONY DURING THE COMPETENCY HEARING REGARDING THE CURRENT MEDICATION AND MEDICAL CARE OF THE DEFENDANT AND (2) UNTIMELY PREPARATION FOR THE DEFENSE OF INSANITY CONSTITUTES INEFFECTIVE ASSISTANCE OF COUNSEL?
¶ 29. In bringing this issue, Edwards focuses his claim of ineffective assistance of counsel in two areas: the first involving his pre-trial competency hearing, and the second concerning his attorney's preparation for his insanity defense. Edwards claims his counsel failed to raise issues during the competency hearing that would have prevented the lower court from finding Edwards competent to stand trial. Edwards also claims his attorney failed to properly preserve his right to raise a plea of not guilty by reason of insanity and failed to provide proof of his insanity.
¶ 30. Before we begin, it should be noted Edwards relies on several things *1060 which are nowhere to be found in the trial court record. Edwards makes reference to the competency hearing and the results several of the medications would have had on Edwards. There is no record before this Court of the events that occurred at the competency hearing, and as such, this Court cannot consider any of this evidence in the evaluation of this issue. Colenburg v. State, 735 So.2d 1099 (¶ 6) (Miss.Ct. App.1999). This Court is bound to only consider evidence found within the trial court record, and therefore cannot rule on anything Edwards mentions about the competency hearing. Id. In looking at the second sub-issue regarding his counsel's supposed ineffective preparation for the insanity defense, this Court must also disregard the references Edwards makes to Dr. Meacham. Edwards lists several things Meacham would have testified to if he had been put on the stand. For the same reason as above, this Court will not consider this evidence. Id.
¶ 31. When considering an ineffective assistance of counsel claim, this Court follows the test outlined by the U.S. Supreme Court in the case of Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As stated above, to prove ineffective assistance of counsel a defendant must demonstrate his attorney's performance was defective and the deficiency deprived the defendant of a fair trial. Hiter v. State, 660 So.2d 961, 965 (Miss.1995). There is a strong presumption the attorney's conduct fell within the wide realm of reasonable professional assistance. Id. For Edwards to prove ineffective assistance of counsel, he must do so by a totality of the circumstances, and this review is highly deferential to the attorney. Id.
¶ 32. Now, considering the above tests, and the strong presumption of adequate counsel this Court follows in examining claims of ineffective assistance of counsel, this Court finds Edwards's defense counsel provided adequate assistance. Edwards's first sub-issue completely lacks substance due to the fact he relied exclusively on facts not found within the record. This sub-issue is without merit and this Court affirms as to this sub-issue.
¶ 33. Regarding the second sub-issue, Edwards's claim of ineffective assistance of counsel must also fail. During a pre-trial discussion, the State notified the court that Edwards's counsel had informed the State that Edwards intended to use the insanity defense seven days before trial, not within the ten days required by the rules. UCCCR 9.06. When the trial court asked Edwards's counsel about this, counsel replied that after discussion with Dr. Meacham, any hope of an insanity defense lay in Edwards's testimony if he chose to testify. The trial judge stated Edwards's counsel would be allowed to use the insanity defense through Edwards's own testimony if there was anything within his testimony which would support an insanity defense. The judge also stated Edwards's counsel would be able to place Dr. Meacham on the stand if counsel and Dr. Meacham thought there was something in the testimony supporting an insanity defense. The State would also be able to rebut this with its own witnesses.
¶ 34. Though counsel failed to notify the State in a timely manner, Edwards's counsel was not prevented from presenting an insanity defense to the jury, nor was he prevented from offering testimony to support such a claim. This failure to timely file may have been error, but there is no constitutional right to errorless counsel. Carter v. State, 775 So.2d 91 (¶ 10) (Miss.1999). Even so, this error was not prejudicial because counsel was not prevented by the court from presenting this theory. Though this might cause Edwards's *1061 counsel to be considered deficient, Edwards cannot overcome the second prong of the Strickland test because he cannot prove "that but for counsel's unprofessional errors, a different outcome would have resulted at trial." Hall v. State, 735 So.2d 1124 (¶ 7) (Miss.Ct.App.1999). There was simply nothing in Edwards's testimony which his counsel thought Dr. Meacham could bolster into an insanity defense. This indicates defense counsel was acting with a strategy. "Having a trial strategy negates an ineffective assistance of counsel claim, regardless of counsel's insufficiencies." Id. at (¶ 10). It should be noted that defense counsel was successful in convincing the jury Edwards was not guilty of three of the nine counts. This in itself is evidence Edwards's counsel was effective and did have a trial strategy. Clearly this claim does not overcome the presumption of effective assistance, and for this reason, we affirm the trial court as to this issue.

CONCLUSION
¶ 35. This Court finds the evidence presented in support of the verdict of guilty on counts seven and nine was sufficient, and that the trial court did not abuse its discretion in denying Edwards's motion for a new trial because the verdict on counts two, three, four, and five were not against the overwhelming weight of the evidence. In addition, the trial court was not in error in allowing the competent lay opinions of the testifying officers into evidence. Finally, this Court finds Edwards was not denied effective assistance of counsel. Therefore, we affirm this case.
¶ 36. THE JUDGMENT OF THE DESOTO COUNTY CIRCUIT COURT OF CONVICTION OF COUNT 2, AGGRAVATED ASSAULT AND SENTENCE OF FIVE YEARS; COUNT 3, CARJACKING AND SENTENCE OF FIVE YEARS WITH SENTENCE TO RUN CONSECUTIVELY TO SENTENCE IMPOSED IN COUNT 2; COUNT 4, SIMPLE ASSAULT UPON A LAW ENFORCEMENT OFFICER AND SENTENCE OF FIVE YEARS WITH SENTENCE TO RUN CONSECUTIVELY TO SENTENCE IMPOSED IN COUNT 3; COUNT 5, AGGRAVATED ASSAULT UPON A LAW ENFORCEMENT OFFICER AND SENTENCE OF FIVE YEARS WITH SENTENCE TO RUN CONSECUTIVELY TO SENTENCE IMPOSED IN COUNT 4; COUNT 7, KIDNAPING AND SENTENCE OF TWENTY YEARS WITH SENTENCE TO RUN CONSECUTIVELY TO SENTENCE IMPOSED IN COUNT 5; COUNT 9, KIDNAPING AND SENTENCE OF TEN YEARS WITH SENTENCE TO RUN CONSECUTIVELY TO SENTENCE IMPOSED IN COUNT 7.
ALL CONVICTIONS AND SENTENCES ARE AFFIRMED AND ALL SENTENCES ARE TO BE SERVED IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS. ALL COSTS OF THIS APPEAL ARE TAXED TO DESOTO COUNTY.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS and CHANDLER, JJ., CONCUR.
BRANTLEY, J., NOT PARTICIPATING.