# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00016-COA

**TREVIOUN LAMONT CORNELIUS BRIGGS**    **APPELLANT**
**A/K/A T.L. BRIGGS A/K/A T.L. CORNELIUS**
**BRIGGS A/K/A TREVIOUS LAMONT CORNELI**
**BRIGGS A/K/A TREVIOUN LAMOUNT**
**CORNELIUS BRIGGS A/K/A TREVIOUS**
**BRIGGS A/K/A TREVIOUN L.C. BRIGGS A/K/A**
**TREVIOUN BRIGGS**

**v.**

**STATE OF MISSISSIPPI**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/29/2014 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN T. COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, ROBBERY, AND COUNT II, TAMPERING WITH A WITNESS, AND SENTENCED TO FIFTEEN YEARS ON COUNT I AND TWO YEARS ON COUNT II, WITH THE SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED - 05/24/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND ISHEE, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1. In 2013, a woman was attacked in the parking lot of Northpark Mall in Ridgeland,

Mississippi, and her shopping bags were stolen. The assailant was identified as a black male wearing a red-colored sweatshirt. Later the same evening, authorities apprehended Trevioun Briggs after he attempted to return some of the stolen items to the stores from which they were purchased in the mall. When authorities searched Briggs's vehicle, they discovered the remainder of the stolen items. Briggs was arrested and tried in the Madison County Circuit Court for robbery and tampering with a witness. He elected to represent himself and allow a public defender to assist in his representation. The jury convicted Briggs of both counts. The circuit court then sentenced Briggs to fifteen years for robbery and two years for tampering with a witness, all in the custody of the Mississippi Department of Corrections (MDOC), with the sentences to run consecutively. Aggrieved, Briggs now appeals. Finding no error, we affirm.

## STATEMENT OF FACTS

¶2. In December 2013, a woman was walking through the parking lot of the mall carrying her two-year-old son and several shopping bags. As the woman opened her car door and placed the packages inside, a man came up from behind and hit her in the head. The woman dropped her son and collapsed onto the pavement. The man stole the shopping bags and ran away.

¶3. Authorities arrived at the scene, and the woman identified her attacker as a black male wearing "a reddish colored sweater." Shortly thereafter, police and mall security were alerted by one of the stores inside the mall that a man was attempting to return several of the stolen items in question. Briggs was arrested as he attempted to obtain a refund for one of

2

the stolen items. After he was apprehended, the other stolen items were found in Briggs's vehicle, along with an orange-colored sweater. In addition to being identified by mall store clerks, the mall security videos also showed Briggs inside the mall with the victim's packages as he entered various stores in attempts to return the stolen goods for cash.

¶4. Briggs was charged with robbery, and placed in the Madison County Jail. While incarcerated, Briggs made numerous phone calls. Several of the phone calls were recorded. The recordings showed Briggs asking for individuals to provide him with an alibi for the times during which he was not seen on the mall video. Accordingly, Briggs was also charged with witness tampering.

¶5. The case went to trial, and Briggs elected to use hybrid counsel wherein he represented himself with help from appointed counsel. At the close of the trial, the jury convicted Briggs on both counts. He was sentenced to fifteen years for robbery and two years for witness tampering, with the sentences to run consecutively, all in the custody of the MDOC. On appeal, Briggs asserts the following: (1) the circuit court erred by not properly instructing the jury regarding the case being circumstantial; (2) his counsel was constitutionally ineffective for failing to request a proper circumstantial-evidence jury instruction; (3) the indictment for witness tampering was flawed; (4) the evidence was insufficient to convict him of witness tampering; and (5) the two charges are subject to reversal for retroactive misjoinder.

## DISCUSSION

### I. Circumstantial Evidence

3

¶6. Briggs presents several arguments regarding his claim that his case was based solely on circumstantial evidence. He asserts that both the circuit court and his counsel erred by failing to provide a proper circumstantial-evidence jury instruction. The record reflects that the circuit court judge, unprompted, stated to Briggs and his appointed counsel outside the presence of the jury while discussing proffered jury instructions that, in his opinion, Briggs's case was "non-circumstantial." He then asked Briggs and his counsel if they were requesting "anything on the record" disputing the circuit court judge's opinion. Both Briggs and his attorney specifically stated they did not. Likewise, the issue was not raised in any posttrial motions. Nothing further was mentioned regarding the issue of circumstantial evidence until Briggs's instant appeal.

¶7. The Mississippi Supreme Court has repeatedly held: "It is elemental that errors cannot be raised in this Court for the first time on appeal. A trial judge cannot be put in error on a matter which was not presented to him for decision." *Patterson v. State*, 594 So. 2d 606, 609 (Miss. 1992) (citations omitted). Moreover, we have held that "it remains incumbent upon the defendant to request [a circumstantial-evidence] instruction. A trial court is not required to sua sponte [give] such an instruction." *Turner v. State*, 945 So. 2d 992, 999 (¶23) (Miss. Ct. App. 2007) (citations omitted). Accordingly, we cannot fault the circuit court judge for not presenting the jury with a circumstantial-evidence instruction.

¶8. With respect to Briggs's claim of ineffective assistance of counsel regarding the circumstantial-evidence instruction, we have previously noted:

> It is unusual for this Court to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal. This is because we are

4

limited to the trial[-]court record in our review of the claim and there is usually insufficient evidence within the record to evaluate the claim. The Mississippi Supreme Court has stated that, where the record cannot support an ineffective[-]assistance[-]of[-]counsel claim on direct appeal, the appropriate conclusion is to deny relief, preserving the defendant's right to argue the same issue through a [postconviction-relief motion.]

*Aguilar v. State*, 847 So. 2d 871, 878 (¶17) (Miss. Ct. App. 2002) (citing *Read v. State*, 430 So. 2d 832, 837 (Miss. 1983)*; Edwards v. State*, 797 So. 2d 1049, 1060 (¶30) (Miss. Ct. App. 2001)). Likewise, nothing was brought before the circuit court with respect to ineffective-assistance-of-counsel claims. As such, we decline to review such claims on this direct appeal.

## II.     Witness Tampering

¶9.     Briggs next asserts that he was improperly indicted for witness tampering, that the jury instruction regarding witness tampering was improperly given, and that the State failed to provide sufficient evidence that he was guilty of witness tampering.

¶10.     First, Briggs claims that the wording of his indictment improperly charged him with witness tampering. The statute for witness tampering reads:

> A person commits the crime of tampering with a witness if he intentionally or knowingly attempts to induce a witness or a person he believes will be called as a witness in any official proceeding to: (a) Testify falsely or unlawfully withhold testimony; or (b) Absent himself from any official proceeding to which he has been legally summoned.

Miss. Code Ann. § 97-9-115 (Rev. 2014). Briggs's indictment read, in pertinent part: "[Briggs] did willfully, feloniously, intentionally[,] and knowingly attempt to induce a witness or a person he believed *may* be called as a witness against him [to provide him with a false alibi.]" (Emphasis added). The indictment went on to make specific reference to

section 97-9-115.

¶11.  "The primary purpose of an indictment is to give the defendant fair notice of the crime charged.  It must contain the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation." *Faulkner v. State*, 109 So. 3d 142, 146 (¶13) (Miss. Ct. App. 2013) (internal quotations and citations omitted).  An indictment must also contain the "essential elements of the offense charged." *Gilmer v. State*, 955 So. 2d 829, 836 (¶24) (Miss. 2007) (citation omitted).

¶12.  Here, Briggs questions the indictment's use of the word "may" instead of the word "will."  Likewise, Briggs assigns error to the jury instruction's wording, which stated Briggs contacted a person "he believed would or could be called as a witness."  We find these arguments to be moot.

¶13.  The record reflects that Briggs contacted a woman and asked her to fabricate an alibi for him during the times in which he was not seen on the mall video.  The fact that he was requesting that someone provide him with an alibi would most certainly make that person a witness in the case.  Briggs was essentially asking the person to be a witness.  Hence, it makes no difference whether the indictment read "will" or "may" or the jury instruction read "will" or "would" since the factual basis surrounding the charge, and described in the indictment, dictated that Briggs thought, and in fact hoped, that the woman he contacted would be called as a witness to provide Briggs with the alibi he sought.  This issue is without merit.

¶14.  Next, Briggs asserts that the State failed to prove that he committed the crime of

6

tampering with a witness. One transcript of the recordings, which was offered to the jury for consideration, read as follows, in pertinent part:

Briggs: [The detective on the case] steady trying to link the stuff to me now, but what I need is an alibi. I need somebody to say where I was. What time did Sienna pay her cell phone bill?

Female: 4 or 5. It was getting dark.

Briggs: Alright, but what I need y'all to say . . . . Alright, but see I told him that was the only reason I came to the mall was to pay the cell phone bill, know what I'm saying?

Female: You think they going to go back and look at the records and see?

Briggs: He did and he told me it was around 4 . . . . See I can't tell them nothing because he was telling me it was around 4, but all this s*** went down.

Female: Tell them you was browsing the mall I guess.

Briggs: Yeah, I know. That's when he seen me on video browsing the mall. See that armed robbery stuff he can't even like, he can't even, the cameras can't even see me. He don't even know it's me. He just seen the image of a dude, but the thing is man, I need an alibi. I need you to, um, call down to, um, Jackson and ask to talk to, um, a detective on the narcotics department. I think his name is Detective Waylon. He real cool, know what I'm saying? I told you he wanted me to tell on somebody. That night he had called me about doing it, but I was like "No. I'll hit you back after I finish cutting hair." . . . I never hit him back and that was around the same time I was at the mall. So, what I need you to do, just to make sure, call them and be like . . . know what I'm saying? Just talk to him like "He need help, man. He didn't do it." Know what I'm saying? . . .

Female: His name detective what?

Briggs: Detective Waylon. . . . I need somebody to write a statement saying that I was with them knowing that will clear up everything. I was with them from . . . around 8:30.

7

¶15. A transcript from a different call reads:

Briggs: Call to Flowood PD and talk to a detective on T.L. Briggs's case and let them know. Tell them that I was with you, know what I'm saying? And you ain't see me for the rest of the day out. I had just went to the mall. Just tell them he couldn't did nothing like that or whatever. Hope it going to blow over because like I said, they ain't got no proof.

Female: The only thing I'm worried about is what if they got an eye witness.

Briggs: They don't. I'm telling you, the only reason they got me because I went in JC Penny for that last thing. . . . I went in there for that last thing and her credit card number was s*** and, um, that's how they got me. . . . What I'm trying to tell you is y'all be my alibi on the s***. Y'all just tell them I was with y'all, know what I'm saying? "There is no way he could've did this. He was at the school with me. I go to Tougaloo and one of the boys up there name Nick ask to ride with him to the store," or whatever. And that's the only thing, you know, and that was the last time you hear from me. I couldn't have robbed them, know what I'm saying? Talk to them. Tell them this here in Madison County. Other than that, man, . . . I'm gonna be a sitting man.

¶16. Yet another transcript from a separate phone call to a female shows Briggs stating the following:

Talk to the attorney and give him the alibi I was with y'all. "We went up there to pay the phone bill . . . and that was it. And that was around 4 . . . . But, shoot he couldn't have robbed nobody because he was with us." Know what I'm saying? We need to do this.

¶17. On appeal, Briggs asserts that the recordings do not show that he was attempting to have someone lie for him – only to request a truthful alibi. This argument fails. The transcript shows Briggs asking for someone to provide him with varying alibis. At one point, he asks the female to state that he was with her at school. Immediately thereafter, he asks

the female to implicate that someone else was at the mall with him. Later, he asks the female to state that she accompanied him to the mall to pay a cell phone bill but that he left with her immediately thereafter. It is quite evident that Briggs was attempting to procure a false alibi. We find the evidence before the jury was more than sufficient to support the conviction for witness tampering. This issue is meritless.

### III. Retroactive Misjoinder

¶18. Finally, Briggs asserts that because he was improperly charged with and convicted of witness tampering, the robbery charge should be reversed on the ground of retroactive misjoinder. However, having found that Briggs was, in fact, properly charged with and convicted of witness tampering, Briggs's argument of retroactive misjoinder fails. The charges of robbery and witness tampering were properly joined and adjudicated. This issue is without merit.

¶19. **THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, ROBBERY, AND COUNT II, TAMPERING WITH A WITNESS, AND SENTENCE OF FIFTEEN YEARS ON COUNT I AND TWO YEARS ON COUNT II, WITH THE SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.**

**LEE, C.J., GRIFFIS, P.J., BARNES, CARLTON, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**