897 So.2d 981 (2004)
David Earl KING, Appellant
v.
STATE of Mississippi, Appellee.
No. 2002-KA-00928-COA.
Court of Appeals of Mississippi.
July 20, 2004.
Rehearing Denied December 14, 2004.
Certiorari Denied March 31, 2005.
*985 Gary L. Honea, Magnolia, James A. Williams, Meridian, attorneys for appellant.
Office of the Attorney General, by Jeffrey A. Klingfuss, attorney for appellee.
EN BANC.
BRIDGES, P.J., for the Court.
¶ 1. David Earl King was convicted of six counts of tax evasion based on the charge that, for six consecutive years, he had substantial business income from the sale of peanut brittle candy upon which a sales tax was due to the State of Mississippi, but that King purposely and knowingly refused to file the proper returns and pay the taxes due. Aggrieved by his conviction, he has appealed to this Court and makes eight contentions that he claims warrant the reversal of his conviction. Those issues are: (1) a double jeopardy claim based on the fact that he was subjected to a civil fine for the same non-payment of sales taxes due; (2) claims that the jury instructions were improper and prejudicial in several different ways; (3) whether the trial judge erred in denying his recusal motion based on the fact that the judge had presided over a prior criminal trial in which King was convicted; (4) whether certain evidence should have been suppressed as being seized in an unconstitutional search; (5) a claim of ineffective assistance of counsel; (6) claims that the trial judge erred by making a number of improper evidentiary rulings, by making improper comments on the evidence, and by sequestering the jury panel list without holding a hearing; (7) a claim that the cumulative effect of all the foregoing errors destroyed the fundamental fairness of the trial; and (8) a claim that the evidence was insufficient to support the verdict based on the contention that the State was permitted to present proof of guilty conduct not actually charged in the indictment, which only charged an evasion of taxes for one month in each of the relevant years.
¶ 2. We have reviewed the issues presented and find them to be without merit. For that reason, we affirm the conviction as to all counts and the resulting judgment of sentence.

I.

FACTS
¶ 3. King operated a business that involved the recruiting and dispatching of individuals  primarily women and children  to act as peddlers in the sale of small packets of peanut brittle candy. Through the recruitment of a fairly large cadre of salespersons, King's operation produced substantial sums of income from sales within the state of Mississippi. However, King did not file tax returns on the sales, nor did he forward any amounts of sales tax that the indictment charged was due on those sales, even though he used the sales tax number from another business in his name to purchase at wholesale peanuts and other supplies used in the candy production. An investigation revealed that King did not maintain a bank account for the candy sales, but rather amassed large sums of cash, and that King did not keep accurate records for the business, so as to include revenues, cost of goods, and employee expenses. As a result, King was ultimately indicted for attempting to evade a lawful tax under Section 27-3-79 of the Mississippi Code for calendar years 1995, 1996, 1997, 1998, 1999, and 2000. The jury convicted King on all counts.

II.

DOUBLE JEOPARDY
¶ 4. King maintains that because he was subjected to a civil fine for failure *986 to timely file sales tax returns, he has been punished in a separate proceeding by the State and, therefore, to subject him to further criminal prosecution is a violation of his constitutional right to not be subjected to multiple prosecutions for the same offense under the Double Jeopardy Clause of the United States Constitution.
The Double Jeopardy Clause provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." We have long recognized that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, "`in common parlance,'" be described as punishment. The Clause protects only against the imposition of multiple criminal punishments for the same offense, and then only when such occurs in successive proceedings.
Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. A court must first ask whether the legislature, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." Even in those cases where the legislature "has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect," as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty."
Hudson v. U.S., 522 U.S. 93, 98-99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (alteration in original) (citations omitted). We do not think the fines assessed against King in a civil proceeding prior to his indictment were so punitive in nature as to constitute a criminal penalty within the meaning of Hudson and, for that reason, find King's double jeopardy argument to be without merit.
¶ 5. Alternatively, King appears to contend that his evasion of taxes was a continuing course of conduct constituting but a single offense, such that anything beyond a one count indictment would constitute a double jeopardy violation as being an attempt to punish him multiple times for a single offense. We find this contention without merit.
¶ 6. The State was proceeding under the theory that a part of the scheme used by King to avoid paying the taxes rightfully owed from candy sales was not to file the required return. As mandated by statute, sales tax returns are "due and payable on or before the twentieth day of the month next succeeding the month in which the tax accrues...." Miss.Code Ann. § 27-65-33(1) (Supp.2003). An attempt to evade or defeat paying such sales tax for any single month constitutes a felony upon conviction, resulting in a fine, imprisonment, or both. Miss.Code Ann. § 27-3-79(2) (Rev.2003). As found by the jury, King willfully evaded paying due tax returns from his candy sales for six years, equaling seventy-two months. Though King was engaged in a continuing course of conduct for the six years charged, each month constituted a separate and distinct offense, and as a result, the State could have properly indicted King on seventy-two counts. See State v. Burnham, 546 So.2d 690 (Miss.1989). The six count indictment, therefore, was proper, and King was not subjected to a multiplicitous indictment, thereby offending his right to be free from double jeopardy.

III.

JURY INSTRUCTIONS
¶ 7. The standard of review applicable when considering challenges to jury instructions requires that the appellate court avoid considering instructions in isolation, *987 but rather consider them as a whole for determining whether the jury was properly instructed. Burton ex rel. Bradford v. Barnett, 615 So.2d 580, 583 (Miss.1993). "Defects in specific instructions do not require reversal `where all instructions taken as a whole fairly  although not perfectly  announce the applicable primary rules of law.'" Id. (citations omitted).
¶ 8. King maintains that by refusing proposed instructions D-5 and D-6, which elaborated on the meaning of the terms "willfully" and "intent," respectively, the court failed to instruct the jury as to "willfully attempts," an essential element of tax evasion from Section 27-3-79(2) of the Code, and as a result, King, although convicted of a felony, was only found guilty of a misdemeanor offense, pursuant to Miss.Code Ann. § 27-65-85 (Rev.2000). Additionally, King contends that jury instructions 7 and 8 were to be limiting instructions, in accordance with M.R.E. 404(b); however, the instructions, which stated the purpose for which the court admitted the evidence, constituted improper comments on the evidence, thereby prejudicing the jury.
¶ 9. Evasion of sales taxes is a malum prohibitum crime, meaning it is "an act which is not inherently immoral, but becomes so because its commission is expressly forbidden by positive law." Blue v. State, 716 So.2d 567, 572(¶ 16) (Miss.1998) (citing BLACK'S LAW DICTIONARY 960 (6th ed.1990)). The court properly refused to give the jury an instruction on "intent" because it is not an element of tax evasion under Miss.Code Ann. § 27-3-79(2) (Rev.2003) and, therefore, does not need to be proven by the prosecution. See Wright v. State, 236 So.2d 408, 414 (Miss.1970). As the record further reveals, the court also properly refused to give the jury an instruction defining "willfully" because of the likelihood of confusing the jury as to criminal intent and to the fact that negligence is not a defense. The court did instruct the jury, however, that King's "state of mind is irrelevant," meaning that it need not find that King acted with the intention of committing the crime of tax evasion, but rather whether King, on each individual count, did "wilfully, unlawfully and feloniously intend not to pay, and did not pay sales tax on sales that were due and owing to the State of Mississippi...." Such instruction sufficiently satisfies the "willfully attempts" language of the statute, and King was properly convicted on all six counts of felony tax evasion.
¶ 10. Lastly, instructions 7 and 8 ordered that the jury, in determining guilt or innocence, must not consider any testimony or documentary evidence regarding incidents prior to 1995, or any checks and drafts written on the church bank account. This evidence was only offered to prove personal knowledge, personal use and benefit, control, continuous modus operandi, opportunity, intent, preparation, plan, identity, or absence of mistake by King, and therefore, the instructions complied with Mississippi Rule of Evidence 404(b). Accordingly, we find King's argument to lack merit because the jury was not prejudiced, and he suffered no deprivation of due process.

IV.

RECUSAL
¶ 11. The trial judge, the Honorable Mike Smith, presided over a previous criminal proceeding in which King was convicted of several unrelated felonies, so as a result, King maintains that the judge, in King's prosecution for tax evasion, erroneously denied his motion to recuse. King contends this denial was in error because the judge possessed a preconceived notion of guilt and exhibited bias, which was apparent *988 by sentencing King to the maximum term permitted by statute and by sequestering the jury list.
¶ 12. The law in Mississippi pertaining to the recusal of a judge has been amply addressed. Under Canon 3 E(1) of the Code of Judicial Conduct, "[j]udges should disqualify themselves in proceedings in which their impartiality might be questioned by a reasonable person knowing all the circumstances...." Rutland v. Pridgen, 493 So.2d 952, 954 (Miss.1986). The decision to disqualify, however, remains in the discretion of the trial judge, Cashin v. Murphy, 138 Miss. 853, 859, 103 So. 787, 790 (1925), and this Court "will not order recusal unless the decision of the trial judge is found to be an abuse of discretion." M.R.A.P. 48B; McLendon v. State, 187 Miss. 247, 254, 191 So. 821, 823 (1939).
¶ 13. When addressing the trial judge's denial of recusal on appeal, "[t]his Court presumes that a judge ... is qualified and unbiased [, and] to overcome the presumption, the evidence must produce a `reasonable doubt' about the validity of the presumption." Bredemeier v. Jackson, 689 So.2d 770, 774 (Miss.1997) (quoting Turner v. State, 573 So.2d 657, 678 (Miss.1990)). King's accusations of impartiality and bias by the trial judge, based merely on receiving maximum sentences without a sentencing hearing and having the jury panel list sequestered, fail to establish such reasonable doubt. Furthermore, impartiality is not apparent simply because a trial judge has presided over a previous criminal proceeding against the defendant. See Adams v. State, 220 Miss. 812, 818, 72 So.2d 211, 214 (1954). Upon careful review of the record, we cannot find that the trial judge's denial of recusal worked a manifest abuse of discretion. Accordingly, this issue is meritless.

V.

SEARCH AND SEIZURE
¶ 14. King maintains that the court issued a search warrant for the specific purpose of entering King's property and seizing pornographic materials and sexual instruments; however, the evidence that was seized included a notebook containing monetary figures and King's federal income tax returns. King, therefore, contends that the seizure of this evidence was a unilateral enlargement of the search warrant, thus violating his Fourth Amendment right to be free from unreasonable searches and seizures. As a result, the trial court committed reversible error by admitting these illegally seized items into evidence.
¶ 15. "The admission or suppression of evidence," as this Court often reiterates, "is within the discretion of the trial judge...." Sumrall v. Miss. Power Co., 693 So.2d 359, 365 (Miss.1997) (citations omitted). Reversal, therefore, is solely conditioned upon finding that the trial judge's decision was the result of "an abuse of that discretion." Id. The applicable standard of review, however, is inconsequential to the resolution of King's contention because the doctrine of collateral estoppel defeats his attempt to relitigate this issue. The U.S. Supreme Court explains that collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).
¶ 16. In King v. State, 857 So.2d 702, 726 (¶¶ 77-80) (Miss.2003), David Earl King's previous criminal prosecution, the Mississippi Supreme Court upheld the trial court's denial of King's motion to suppress *989 certain evidence seized pursuant to an illegal search and seizure. The search and seizure issue addressed by the supreme court in that case is one and the same with that which King now raises in the case at bar. King is consequently procedurally barred from litigating this issue again.

VI.

INEFFECTIVE ASSISTANCE OF COUNSEL
¶ 17. King maintains that his conviction requires reversal by claiming his counsel rendered ineffective assistance (a) by failing to request a change of venue, (b) by failing to raise a Batson challenge against the State, pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and (c) by failing to adequately prepare for and conduct trial. King alternatively contends, in an effort to circumvent any procedural bar to his assignments of error, that they may still be reviewed under the plain error rule.
¶ 18. The success of King's ineffective assistance of counsel challenge is dependant upon him satisfying the two-prong test enumerated in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which was adopted by the Mississippi Supreme Court in Stringer v. State, 454 So.2d 468, 476-77 (Miss.1984). Under the test in Strickland, King:
must [first] show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland, 466 U.S. at 687, 104 S.Ct. 2052. The Strickland standard is applied under the strong but rebuttable presumption that counsel is competent and conduct at trial is reasonable, and appellate review of counsel's performance requires considering the totality of the circumstances for determining whether counsel's actions were both deficient and prejudicial. Leatherwood v. State, 473 So.2d 964, 969 (Miss.1985).

A. Change of Venue
¶ 19. Prior to the proceedings that produced the appeal at bar, King was tried and convicted in Walthall County, the county of his residence, of conspiracy to commit sexual battery, sexual battery, and contributing to the delinquency of a minor. King maintains that his stature in the community, in conjunction with the nature of the offenses charged by the State, culminated in a highly publicized trial, to the extent that the entire jury panel in the case at bar admittedly knew of his previous convictions. King contends, consequently, that having the trial in Walthall County was prejudicial to his defense, and that his counsel's failure to move for a change of venue constituted ineffective assistance.
¶ 20. The Mississippi Rules of Appellate Procedure mandate that the arguments advanced by the parties' in their briefs "shall contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on." M.R.A.P. 28(a)(6) (emphasis added). In his brief, King fails to cite any authority supporting the claim that his counsel's failure to request a change of venue demands *990 reversal. As a result, this issue is procedurally barred. See Read v. Southern Pine Elec. Power Ass'n, 515 So.2d 916, 920 (Miss.1987).
¶ 21. King's assignment of error, however, also fails on its merits because it cannot satisfy the first prong of Strickland. Being under no duty to request a change of venue, the decision by King's counsel to refrain is viewed as trial strategy. Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); Faraga v. State, 514 So.2d 295, 307 (Miss.1987). Counsel's mere refraining from requesting a venue change does not fall outside the ambit of reasonable legal assistance, so King's ineffective assistance claim as to this issue has no merit. Leatherwood, 473 So.2d at 968.

B. Batson Challenge
¶ 22. The entirety of King's argument on this ground is as follows, verbatim:
Defense counsel made no Batson objections as the jury was selected, but in fact used 4 of the 6 peremptories he used to strike men in a case where he surely knew abuse of women and mistreatment and even involuntary servitude would be revealed to the jury.
¶ 23. By failing to cite any authority, King's Batson argument also clearly fails to meet the standards enunciated in M.R.A.P. 28(a)(6). As a consequence, this assignment of error is procedurally barred. See Southern Pine, 515 So.2d at 920.

C. Trial Conduct
¶ 24. King maintains that his counsel failed to utilize and familiarize himself with the evidence presented in discovery, and that his counsel's examination of witnesses was prejudicial because he asked questions producing inflammatory responses. More specifically, King contends that at a suppression hearing his counsel suggested an answer when questioning a witness, which resulted in him failing to establish a basis for suppressing the evidence allegedly seized in an unconstitutional search. King also claims that his counsel's examination of Nathan Paul King, the defendant King's son-in-law, permitted the State to later inquire as to details concerning King's relationship with his daughters-in-law, who testified that King beat them severely.
¶ 25. On these grounds, King accuses his trial counsel of ineffective assistance, yet King apparently "fails to consider all that [his counsel] did throughout the course of his trial." Smith v. State, 737 So.2d 377, 383, (¶ 15) (Miss.Ct.App.1998). His counsel filed motions to dismiss the indictment, filed motions to suppress evidence, filed motions in limine, filed a motion to recuse the trial judge, attempted to discredit while cross-examining the State's witnesses, submitted appropriate jury instructions, moved for a directed verdict, made reasonable opening and closing arguments, made perpetual contemporaneous objections to the State's examinations of witnesses, and filed a motion for JNOV or, in the alternative, a new trial.
¶ 26. King's argument fails to demonstrate with "reasonable probability that without counsel's error the outcome of the trial would have been different." Eakes v. State, 665 So.2d 852, 873 (Miss.1995). Failing to satisfy Strickland, we find King's ineffective assistance claim to have no merit. We additionally find that none of King's claims constitute plain error by his counsel, so such analysis is unnecessary.

VII.

ERROR BY TRIAL JUDGE
¶ 27. King maintains that the trial judge made numerous erroneous rulings *991 throughout the trial, most of which were evidentiary, producing a prosecution fraught with highly inflammable and prejudicial evidence. King claims that his conviction must be reversed because the judge erred (a) by allowing testimony regarding King's character, (b) by allowing testimony of prior bad acts, (c) by sequestering the jury panel list without a hearing, (d) by allowing Ms. Tracy Berry to participate at trial in a dual capacity, (e) by allowing evidence to show continuous control of the business, (f) by imposing a sentence disproportionate to the crime, and (g) by making a prejudicial comment on the evidence.
¶ 28. Evidentiary decisions regarding relevance and admissibility lie predominately within the discretion of the trial judge, so when reviewing such decisions, the reviewing court will not reverse unless this discretion was so abused as to be prejudicial to a party. Century 21 Deep South Properties, Ltd. v. Corson, 612 So.2d 359, 369 (Miss.1992).

A. Character Evidence
¶ 29. King testified at trial as to his benevolent nature and how he has helped so many people. Gazetta Slocum's testimony, though brief, bolstered King's self-serving comments. In light of their testimony, the trial court held that King's character had been put in issue, which King maintains is error. King further claims error by the trial judge in allowing the State to introduce into evidence a document listing individuals to whom King had loaned money, including his son, Leon. The admittance of the document was restricted, however, for the sole purpose of attacking King's character based upon a statement written thereon, which claimed that the list named "trash" who had not repayed him. Upon review of the record, we cannot find that the judge abused his discretion, so this issue is without merit.

B. Prior Bad Acts
¶ 30. King testified at trial that he played a minimal role in the peanut brittle business and, accordingly, was indifferent as to the quantities sold. Tabitha King and Leah King, ex-daughters-in-law of the defendant King, then testified in rebuttal. King maintains that Tabitha and Leah were erroneously permitted to testify as to prior bad acts, i.e., that King beat them when they returned home with inadequate, or below quota, sales, that King worked them excessively, and that King forced them to work when sick. King contends that the inflammatory nature of their testimony obligates the judge to allow him surrebuttal. The judge responded that he believed surrebuttal to be unnecessary in this case because the testimony of Tabitha and Leah was
in rebuttal to what [King's] testimony was regarding the sale of peanut brittle. We're gonna give a limiting instruction saying that [their] testimony is not to be considered regarding [King's] guilt or innocence regarding the sales tax evasion; it just goes to his credibility and the weight ... to be given his testimony. But him testifying and in the record it is clear that it was completely voluntary and this is in direct rebuttal to his testimony that the sale of peanut brittle was entirely voluntary, and I'm going to admit it. And I find that its probability outweighs any danger of unfair prejudice.
We cannot find that the judge abused his discretion and, therefore, find this issue without merit.

C. Sequestering the Jury List
¶ 31. King maintains that the judge improperly sequestered, or sealed, *992 the jury panel list without holding a hearing. In Valentine v. State, the Mississippi Supreme Court stated "that only in rare and exceptional cases should a presiding judge sequester or keep secret the names of jurors drawn from the jury box," and before making such determination, the judge "should cause the record clearly to demonstrate good and sufficient reason `in the interest of justice.'" Valentine v. State, 396 So.2d 15, 17 (Miss.1981) (quoting Miss.Code Ann. § 13-5-32 (Supp.1980)). The judge decided in the case at bar to keep the jurors' names secret based on events from King's previous prosecution which created suspicion of witness tampering. However, we are unable to address the merits of King's issue because by not declaring what prejudice resulted from this claimed error, nor citing to any authority in support of his argument, his brief failed to meet the mandates prescribed in M.R.A.P. 28(a)(6), and so, this issue is procedurally barred. See Southern Pine, 515 So.2d at 920.

D. Testimony as Expert and Representative of the State
¶ 32. King objected to Ms. Tracy Berry testifying as an expert at trial on the ground that she could not be presented to the court in a dual capacity, as a representative of the Mississippi State Tax Commission and as an expert for the State. In his brief, however, King advances distinctly differing grounds, i.e., that Berry's testimony, as an expert, was given enhanced importance so that her assessment of King's profits when considered in light of his failure to protest the amount, represented an admission by King. By tendering a completely new basis for objecting, King barred this Court from reviewing the issue because we cannot put a trial judge in error for an issue never brought to his attention. Read v. State, 430 So.2d 832, 838 (Miss.1983).

E. Continuing Business
¶ 33. King also maintains in regards to Ms. Berry's testimony that she should not have been allowed to testify that his business activities had produced profits estimated to exceed $1,800,000. We cannot find that the judge abused his discretion in allowing this testimony of Ms. Berry, nor, for that matter, in allowing the introduction of other evidence on this ground, though assigned as error by King, in light of the judge's explanation that it was admissible "to show a continuing course of activity and a continuing modus operandi and to show that, in fact, ... it is a business and has been a continuing business," and therefore, "the probability outweighed any danger of any undue prejudice."

F. Imposition of Disproportionate Sentence
¶ 34. King was convicted and sentenced pursuant to the mandates of Section 27-3-79(2) of the Mississippi Code. The sentencing guidelines under this section declare that any person convicted "shall be fined not more than One Hundred Thousand Dollars ($100,000.00) ... or imprisoned not more than five (5) years, or both." Miss.Code Ann. § 27-3-79(2) (Rev.2003). For each of the six counts in his conviction, King was fined $20,000 and sentenced to five years, and King now claims that his sentence is disproportional to his crime. As we have explained, "this Court will not engage in analyzing a sentencing order unless it is considered constitutionally disproportionate or not within the statutory limits." Everett v. State, 835 So.2d 118, 123-24(¶ 21) (Miss.Ct.App.2003) (citation omitted). King's sentence was clearly within the limits allowed under the statute, and so, we find that the issue has no merit.

*993 G. Comments by the Judge

¶ 35. Only a few minutes after returning to the courtroom for the purpose of hearing King testify, the jury was again excused, at which time the judge told the jury, "Ladies and gentlemen, excuse us. We have another matter to take up outside your presence. Bear in mind, please, that we're trying to get the very best evidence for you to consider when we do this. Excuse us." King maintains that this statement was prejudicial, though he fails to explain how he was prejudiced. Nonetheless, after careful review of the record, we cannot find how any prejudice might have resulted, so we find this issue to have no merit.

VIII.

CUMULATIVE EFFECT OF ERRORS
¶ 36. King contends, in the event that the individual errors throughout his trial are deemed harmless, the cumulative effect of these errors deprived him of a fundamentally fair trial, which requires this Court to reverse his conviction. However, when we find no reversible error in any single part of the trial, we certainly cannot find reversible error as to the whole. McFee v. State, 511 So.2d 130, 136 (Miss.1987). We accordingly find this issue to have no merit.

IX.

THE SUFFICIENCY OF THE EVIDENCE
¶ 37. In his final assignment of error, King challenges the sufficiency of the evidence by contending that the indictment only charged evasion of taxes for one month in each of the relevant years, however, the State presented evidence proving that King evaded taxes for several months in each of the relevant years. King asserts that the State's evidence, therefore, proved crimes that were not charged in the indictment, so King's conviction is accordingly founded on legally insufficient evidence, which demands reversal.
¶ 38. "In order to preserve a challenge to the sufficiency of the evidence for appellate review, the defendant is required first to present the matter to the trial court for consideration through an appropriate and timely motion." Gilmore v. State, 772 So.2d 1095, 1098(¶ 7) (Miss.Ct.App.2000). Generally employed for this purpose are motions for a directed verdict at the close of the State's evidence and motions for a JNOV after the jury has returned a verdict. McClain v. State, 625 So.2d 774, 778 (Miss.1993).
¶ 39. At the close of the State's case-in-chief, King moved for a directed verdict asserting that "the State has not met each and every element of the statute by which [King] is charged." In Banks v. State, the Mississippi Supreme Court explained:
motions for a directed verdict must be specific and not general in nature. A motion for a directed verdict on the grounds that the state has failed to make a prima facie case must state specifically wherein the state has failed to make out a prima facie case. In the absence of such specificity, the trial court will not be put in error for overruling the same.
Banks v. State, 394 So.2d 875, 877 (Miss.1981). Being very generalized and vague, King's assertion unquestionably lacks the requisite specificity for preserving the issue for appeal. See Edwards v. State, 797 So.2d 1049, 1056(¶ 19) (Miss.Ct.App.2001). Moreover, King's motion for a JNOV equally failed to preserve this issue. The legal sufficiency of the evidence was never mentioned by King in the JNOV motion nor in the course of the subsequent hearing held by the court. Although King did *994 include in the motion and at the hearing that the verdict was against the overwhelming weight of the evidence, he in no way implicated the sufficiency of the evidence, and we have often discussed the functional distinction of these claims. See Carr v. State, 774 So.2d 469, 472-73 (¶¶ 12-15) (Miss.Ct.App.2000). By failing to preserve a challenge as to the sufficiency of the evidence, King cannot now raise it for the first time on appeal. The issue is procedurally barred, and we will not address its merits.
¶ 40. THE JUDGMENT OF THE CIRCUIT COURT OF WALTHALL COUNTY OF CONVICTION ON SIX COUNTS OF SALES TAX EVASION WITH ORDER TO PAY A FINE OF $20,000 ON EACH COUNT AND SENTENCE OF FIVE YEARS ON EACH COUNT, TO BE SERVED CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. THESE SENTENCES SHALL BE SERVED CONSECUTIVELY TO SENTENCES RECEIVED IN CAUSE NUMBERS 2001-60-B AND 01KRO23. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., SOUTHWICK, P.J., LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.